And so we'll call United States v. Ellis, and we'll hear from Mr. Zasztorski. Zasztorski, Your Honor. Zasztorski. Right. Thank you. Good morning. May it please the Court, my name is Joe Zasztorski. I represent the appellant, Tamarcus Ellis, in this case. The issue before the Court is the application of Waller v. Georgia to a partial courtroom closure that occurred during Mr. Ellis' trial during the testimony of a cooperating defendant who was testifying about drug transactions he engaged in with Mr. Ellis. Your Honor, as seen in the transcript, the cooperating witness was Malcolm Russell. His testimony carried over from day one to day two of the trial. At the outset of day two of the trial, the trial court sealed the courtroom, noted that the court had been provided information from the U.S. Marshals Service that one or more spectators had been chattering their teeth in a manner that signaled disagreement with the testimony. Let me ask you some proposition. Obviously, closing a courtroom, closed trials are very fundamental to our whole system. I mean, we have to have open courtrooms. It distinguishes us from the rest of the world almost in many instances. So we can't belittle that at all. Is it, as a proposition of law, appropriate for a district court to close the testimony of a single witness during a trial because of intimidation of the witness as a legal proposition? If the judge makes the appropriate findings under Waller, I think yes, Your Honor, that can happen. Okay. So we're not talking about absolutely having to keep a courtroom open for every type of situation. We have numerous types of circumstances where we can cut off the witness's testimony. We have a lot of circumstances where evidence and things don't happen in the full public. But generally here, we had 13 witnesses, and we had half of a witness's testimony's trial closed. And so the question is, the court closed it because of alleged intimidation or potential intimidation, and the question, I suspect, now really comes down to did the court have enough to do that? Well, and I think, Your Honor, the first question is, under Waller, when we say the court ---- and Waller, all the principals, everybody agrees on Waller. Waller goes to the principal. We're talking about a partial closure. We're talking about a partial closure even as a witness, and we're talking about a closure based on the court's conclusion that there was potential intimidation. And, Your Honor, even under Baronet, even under a partial closure, under this court's decision in Baronet, even under a partial closure, the trial court still has to address the four factors under Waller. The first factor is ---- Wait, can I stop you there because I'm not sure that's right? So I take Baronet not to say that and to leave open the question of what we do in the context of a partial closure because what the court says is we don't need to go down that road because even if full Waller applies, it's satisfied. Right? So I don't ---- I guess you said Baronet requires that we do Waller. It doesn't seem like that at all. It seems like it says even if we apply full Waller, it is satisfied, which is different from what you say. Not only that, Baronet recognized a slew of courts that sort of reduced the standard, the requirements, in a partial closure. I mean, just think of it as a notion that the whole protection is to make sure trials are transparent and the public knows about them and we don't have a disappearance in the middle of the night and all of a sudden somebody's in the pit. I mean, we have open trials. Now, when there's a partial closing, most of those values are shared. Here we had a very modest closing of a, what, an hour and a half of testimony or an hour and a half of testimony or hour of testimony and reopened. And so other courts, Baronet recognized those courts and cited some. Other courts have lowered the standard from Waller. And the question is, shouldn't we do that too or not? Well, Your Honor, I don't know that they lowered the standard. I think that they found that the interests in Waller were protected in those cases. And that's where I would, that's what I would distinguish here. Don't you think those cases had a different standard than Waller? Well, they had a lesser standard, certainly, Your Honor. Yes, that's what I'm just saying. But I think here, for example, one of the things in Waller that's required is that the court consider alternatives and not make the closure any broader than necessary, something the district court didn't. Let me ask you, counsel, if we say there's a partial closure, at least in theory you could say that's true for this part of this one witnesses, what's the record evidence, if there is any, that anyone was excluded from the courtroom? Well, I think there's two pieces to that, Judge Agee. One is you've seen the argument in the briefs over the stepfather. And it's our position that the stepfather was excluded from the courtroom based upon the exchange in the transcript at joint appendix 198 through 202. There was no objection in the district court to identify the stepfather as being excluded. It's just your arguments depending on how you read that one exchange, which could just as easily be read to say that the stepfather was admitted. Well, Your Honor, I think there's a second piece to that, though, which is joint appendix page 204 where the district court says when Mr. Russell gets up on the witness stand before the jury comes in, the district court says to Mr. Russell, and for purposes of your testimony, I've limited the attendees to the courtroom. In theory, we can say that's true. What I'm asking is, and maybe there was, is there any record evidence that anybody was actually excluded? The only record evidence, Your Honor, is those transfer pages that I've outlined. And the issue of the stepfather, I can't tell the court that somebody came to the, that the record shows somebody coming to the door and being turned away. Well, I thought there was affirmative evidence that nobody did. I thought the marshal or somebody said nobody came to the door to go in. The marshal, Your Honor, when asked, said no, not that I can say. And it was a CSO, one of multiple CSOs in the courtroom. We don't know what that person saw or didn't see. But his quote was, no, not that I can say. But Judge Agee, to answer your, go ahead. If we assume that you have this order of the court that says there's a partial closure, but there's definitive evidence that nobody sought entry to the courtroom, and you obviously did, at least in this case, have a number of individuals who were present, not just counting the jury and the prosecutor and the judge and the marshals, but you've got the family of the defense counsel, perhaps the stepfather and others. Are you still of the view that in that circumstance, where there's no evidence that anybody was excluded, that there has to be a full Waller discussion by the trial court? I am, Your Honor, because I would say that that's what the case law requires. I would also dispute. I'm interested in that. When you have a partial closure declared, let's say an entire witness is closed because of intimidation or some other reason, where is a case that says you have to follow the standard of Waller? I thought the courts generally lowered the standard. You agreed there was a lesser standard applied on partial closures. There's a lesser standard applied on prong one. Yes, Your Honor, on the baronet. I would look, Your Honor, to Carson v. Fisher, which is the case cited by the government in its brief. There the trial court excluded the defendant's ex-mother-in-law from the courtroom and made detailed findings about threats to the witness and about doing it in a way that limited the impact on the jury. All of those things comply with the requirements of Waller. Well, I understand the fact that in baronet we applied Waller, but the question is it didn't look like we had to. The question is the whole value of closing a courtroom, of preventing the closure of a courtroom, most of the value on a partial closure is avoided. In other words, we have a trial that goes on. The public knows about it. They're generally available to it. The jury's in the courtroom, the counsel in the courtroom, and the closure is temporary, and there's good reason for the closure. Now the question is what value, constitutional value, are we serving in that circumstance? I mean, Waller's talking about, you know, the star chamber, and they recited those types of things. And that's very clear, has to be a very strict standard. But here we have a partial closure of itself, may not even implicate most of the constitutional values. Two pieces to that I'd like to address, Your Honor. The first, the overall question you ask about that, and I think it goes to the fact as to why this is structural error. Because the defendant doesn't have to show prejudice. If it's error, it's structural. We all agree on that. In other words, we agree that you can't close the courtroom. That's structural. And prejudice is not an issue. But that's what structural means, whether somebody's prejudiced, we don't decide that. But that isn't the issue here. The issue here is what is the standard to be applied in reviewing a partial closure of a courtroom, which is half a witness and partial closure with respect to the public? Because there were members of the public admitted. Your Honor, I would say the standard is the first prong of Waller is reduced, which Baronet says it's reduced, and that Waller applies. I don't think there's any case that says Waller does not apply. What was the problem here that you can't? The problem here is threefold, Your Honor. Number one is you mentioned the reason for the closure. Well, the court never made a finding as to the reason for the closure. Defense counsel pointed out to the trial court, we think Mr. Russell is now having to face the fact that he's testifying under oath in a courtroom. And the court never resolved that. Remember the U.S. marshal who was reporting the secondhand information to the trial court said, I did not get the words to the effect of, I didn't get the feeling that he was saying that he was trying to intimidate the witness. The court never resolved that conflict. Can I go back to the question I had about Baronet way back? Sorry. So you suggested that Baronet required that we do some version of Waller for a partial closing. And I guess I'm just trying to tease that out just a little bit more. So imagine a trial court judge says once a witness starts testifying, nobody can come in or out of the courtroom, right, because it's disruptive and people make a ruckus and it distracts my jury and everything else. Is that a partial closure in your mind that would require Waller? I think it is, Your Honor. Okay. If for a minute, will you accept hypothetically that that does not implicate the Sixth Amendment public trial right? And can you tell me why your case is different? Right. So imagine a court that says this and that that does not implicate the Sixth Amendment public trial right, because there are members of the public that are in the courtroom and controlling the ingress or egress does not implicate whether the trial is public, any more than saying there are only 50 seats that are in this courtroom. And so not allowing the 51st person to like, you know, squat in the corner isn't a Sixth Amendment problem and, you know, is within the court's discretion. So tell me why you think your case is different than that case, such that Waller should apply in your case, even if you accept hypothetically that these reasonable limitations on ingress, egress, capacity, and the like, and perhaps, you know, compliance with basic rules, would allow some what we might call partial closure, but maybe we just call sort of controlling the courtroom. I think this case is different, Judge Richardson, because this is caused by the teeth chattering. And the teeth chatter could be addressed very simply by either identifying and excluding that person. But that gets past my question. My question is whether the Sixth Amendment is implicated. And you're saying, oh, the weighing of the Sixth Amendment interest is different. I'm asking at the threshold question, in my example that you can't come in or out of the courtroom, what I'm asking you to accept is that is simply not a Sixth Amendment problem. That does not implicate the Sixth Amendment right, because the public is in this courtroom. They're sitting here. They're all back there. But I'm just saying during testimony, you can't come and go until there's a break, and then you can come and go. I'm just controlling the manner in which the courtroom is operating, and that that's not a Sixth Amendment issue. That doesn't mean, you know, your issue might well be different. But what I'm trying to understand is, can you pull those two apart, or do you think that yours looks like what I'll call sort of limitations on ingress and egress, because there were indeed members of the public present, right? Who it is doesn't matter a great deal, but there are members of the public that are present. It is a public trial in the sense that there are public individuals in the courtroom. And, Your Honor, to be blunt, I'm having a hard time pulling apart what you're doing with our position because I just think that to your position, what you're posing necessarily means the Sixth Amendment isn't implicated. What I'm saying is if you're closing the courtroom doors to the public. Even for ingress, egress, you think that's a Sixth Amendment violation? I think that I've got to be heard as the defense lawyer on that issue, and you've got to make some findings about why this is a problem such that we're going to close those doors during the testimony. And that absent Waller-style, like, you know, effectively compelling interest and narrow tailoring, the trial judge lacks the ability to control ingress or egress during, you know, witness testimony or summations or the like. Yes, Your Honor, because- I'm not sure if you think that through, that doesn't quite make sense. I mean, a court could basically say we've had too many interruptions. As a matter of fact, I've seen this. I was a trial lawyer, and we're not going to have people come in and going. We also exclude people during the testimony of other people, witnesses. And we also exclude people because there's no more room, and the court doesn't make findings. What we have is a situation is the court could be pressed into findings. Somebody could assert a First Amendment right, or somebody could assert a procedural right. But the constitutional right of a closed courtroom has not been violated, and Waller is not even implicated. So the court is addressed with, some judge says, some lawyer says, I object, Your Honor. I want that person in. And the court says, why? And he says, because he's my friend, and I want him to. I mean, you can take it however you want, but the court doesn't have to respond to that. And there's review of that, too, if somebody objects. But it's not a Sixth Amendment problem. Well, and I think, Your Honor, and I'm sorry I'm over my time, but to answer your question- No, please, please. Unfortunately, it's a simple answer, which is, that's not what happened here. No, what happened here, I understand what happened here. There was a closure. The court said, I'm sealing the courtroom. And I've sealed courtrooms down here because of confidential information. Sometimes we have trade secrets being discussed during the trial. These are all things, and I don't have to make a finding there's a trade secret or not. We just have to have a reason that withstands constitutional muster. But your argument is that there weren't formal findings of fact by the district court to say that this witness is being intimidated. The court obviously, this is a very experienced judge, and this judge obviously thought it was necessary to close the courtroom in order to get the free testimony of the witness. The witness was hesitating. The witness was acting cautiously, and the court observed that. My argument, Your Honor, is that the court did not resolve the dispute about witness intimidation and did not consider the alternatives required by Waller, which would be as simple as- Is there an objection? Well, she objected generally to it not being an open courtroom. Trial counsel did, Your Honor, and that's in the record. Yeah, yeah. Yes. Okay. Thank you. You have some rebuttal. Let's hear from Ms. Brown. Good morning. Lucy Brown for the United States, and may it please the court. Tamarcus Ellis had a public trial where the purposes of the Sixth Amendment were fulfilled. It lasted four days. The parties gave openings and closing, entered dozens of exhibits, and called more than a dozen witnesses. And for part of one of those- I see that as a concept. Is a partial closing, closure, let's say with respect to one witness in a trial, entire witness, is that a Sixth Amendment problem? And has the Supreme Court addressed that? We don't believe there's a Sixth Amendment problem because we don't believe the Sixth Amendment was even implicated by what happened here. Now, stay away from here. I'm trying to get some of the parameters. Sure. In other words, is a partial closure implicate when the trial is open to the public, and then during the course of trial the court closes it temporarily, does that implicate the Sixth Amendment? Certainly not necessarily. Wait, I'm sorry. I've got to assume you don't understand the question. Okay. Because if a court has a trial- Yes. And one witness gets ready to testify, and the court says, I'm going to close the entire courtroom. I'm not letting anybody in. There's going to be no public in the trial. Yes, okay. And that witness testifies with nobody in the trial, and then after that witness the court opens the trial back up. I take it the government's position is that that implicates the Sixth Amendment. Thank you. I did not understand the question. Absolutely. Okay. The government cares a great deal about public trials as protected by the purposes of the Sixth Amendment. Thank you. So when is it that you think it's not implicated, right? Because in the example that Lisa understood, that would at least implicate the Sixth Amendment. Yes. It might well be justifiable under Waller in a particular scenario, but when is it that you think it is not implicated? The standard that courts have used is this triviality standard. I think the guideposts from that, having reviewed those, the things that I kept coming back to and realizing in that analysis, is when it's of a duration and a scope that do not offend the purposes of the Sixth Amendment. All right. So help me understand. I know these aren't in the briefing, but so the Supreme Court in Rodriguez addressed this idea of triviality in traffic stops, and the Fourth Circuit and other courts had said, you know, And the Supreme Court in Rodriguez was like pretty dismissive of that idea, I think for good reason. And it seems like your argument here is just a version of that, which is to say, listen, as long as it's like a little violation of the Sixth Amendment, we don't really care. It seems like the court in Rodriguez, admittedly, that's a Fourth Amendment case, not a Sixth Amendment, but it seems like to wholly reject this notion that de minimis constitutional violations don't matter. I don't see it that way. I see this as a threshold question before you even get to whether there's a violation of the Sixth Amendment, that it's a separate inquiry. This threshold question of Why don't you define what you think is this threshold question before you get to the Sixth Amendment inquiry? Certainly. So the threshold question is this notion of triviality that courts have found, including this court, that sometimes there are limitations on access to a courtroom that simply do not implicate, that are entirely too trivial to implicate the Sixth Amendment. So we're not questioning was it violated. We're talking about exactly what the court in Rodriguez said was like absolutely wrong. Right. Because what courts had said is when it's a trivial seizure or extended seizure, when it's trivial, it doesn't implicate the Fourth Amendment. Right. That's what the courts had said. Almost all of them. Right. And the Supreme Court laughs at that effectively. Right. They're like, yeah, there's no de minimis exception to the Fourth Amendment. Right. And you're just asking us to adopt a de minimis exception to the Sixth Amendment. Right. And as a pragmatic matter, that makes a ton of sense. Right. I don't think I'm asking you to adopt it. I think this court has made that finding before. So this court has found in Snyder. I think the question might be, just to contribute something from the side here, that it might be that a full closure of the courtroom is the value being protected. And when you have partial closures, they're subject, they can implicate the Sixth Amendment or they need not. And I think there's a bunch of courts that use the word de minimis violations, which mean they're not violations. Yes. And that don't implicate the Constitution. Whereas, I suppose in the Fourth Amendment, if you go beyond the time and you're seizing somebody, there is no such thing as de minimis because you're seizing them beyond the justified stop time. Yes, Your Honor. And it's the same with other constitutional violations. So the question really wouldn't get quite to Judge Richardson's question. I suppose what some of these cases are saying, we never get to a Sixth Amendment violation at all. Yes, Your Honor. That's what this court and other courts have held, that there is this threshold where we're not even implicating that Sixth Amendment. We're not doing that analysis. How do we know when we reach that we're in this preliminary stage, so to speak? What standard do we have to know whether or not we've gotten to the point where the Sixth Amendment's implicated? Certainly. So this court has said that certain circumstances are entirely too trivial to implicate. In doing a survey of other cases, and other circuits have expanded on this triviality notion more than this case has, though this court has found it multiple times, the principles that I kept coming back to when seeing that analysis is the duration and the scope of that closure, the scope being who's in the courtroom and what's happening in the courtroom in that time. So the duration here, as Judge Niemeyer mentioned, I actually think it was well under an hour and a half from the time court opened to the time Mr. Russell stepped down was an hour and 20 minutes. I see 27 pages. Tell me why possibly that matters. The length of the time that the prosecution witness is testifying somehow affects whether the Sixth Amendment is violated. I mean, you can give damning testimony in five minutes or you can give it in five days, but it seems odd to me to suggest that the fact that the witness's testimony was short but the public was excluded from it means that the Sixth Amendment isn't implicated at all. I will confess that that line of sort of a standard seems totally nonsensical to me. So I have several thoughts to that, and I understand you're proposing somewhat of a hypothetical. I don't think the public was excluded here, so I think that's important. You're answering Judge Agee's question, what's the standard? And the first thing you point to is how long was it closed? I think the more important one potentially is the scope. I certainly think it's more important here. And that scope question would cover who's in the courtroom and what's going on in the courtroom. I do think that's probably more important. Do you think we look at what the district court said it was doing, or do we try to recreate the effect of the district court's order? I think we look at what actually happened, and I don't think what the district court said. Why? Tell me why that is. Tell me why I shouldn't. I mean, in here that might matter, right, because the district court said I'm closing the courtroom. She said we're going to finish without anyone in the courtroom, and that is certainly not what happened.  But, well, that's certainly not what happened. It seems like a hard line. But why should we ignore what she said she was doing and instead sort of adopt what sort of ended up happening where she let a couple people back in and maybe excluded one person and maybe excluded unknown members of the public the bailiff didn't know? It seems odd for us to try to recreate what ended up happening, because that feels like we're just doing harmless error review. We're asking prejudice rather than sort of accepting the structural error. I don't think that is what we're doing. I think in a harmless error review, the court says, well, this error happened, but essentially were you guilty anyway? That's not the inquiry here. No one is saying that's the inquiry here. The inquiry here is did what happened implicate the Sixth Amendment? And you do look at some of the impact of what that was. That's how we determine whether constitutional rights have been violated. But I think it is a separate inquiry than a harmlessness. And the government recognizes we're not doing harmless error in this. We're not arguing that we are. And I think you do look at what happened. And what the court said initially, and I don't know if this was her intent at the time, but it's certainly not what happened when she said we're going to finish without anybody in the courtroom. We can name double digits of people who remained in the courtroom, including everyone the defendant requested to remain in the courtroom, the people who he felt protected his interests and who he wanted there. We also had members of the public and the defense attorney's parents. We had someone I realized had ---- Counsel, we know what the record says about these folks there. But to go back to my original question, you know, this is we're not necessarily, as I'm sure you know, when we're deciding a case, we're not necessarily writing solely to resolve that case. But there are principles for cases that follow. So back to the original question, if the issue we're trying to address is how do we know whether we've approached a violation of the Sixth Amendment that the Sixth Amendment has been implicated, which requires a certain framework for us to answer that question. But if you're pursuing what's been colloquially termed a triviality exception, so far I've heard you say the standard for making that determination is, well, you look at the time that there's a partial closure, you look at the scope that there's a partial closure. What else do you say we look at? And what do you say is the best case that substantiates your position here? I think what else you look at is what I'm referring to within that scope question, which is who remains in the courtroom, what purposes of the Sixth Amendment are they serving, and what's going on in the courtroom at that time. I don't think all moments of a trial are created equally, or a proceeding, I should say, are created equally in relation to the Sixth Amendment inquiry. So when you look at those purposes of the Sixth Amendment, promoting a fair trial, holding the judge and the prosecutor accountable, encouraging witnesses to come forward, and discouraging perjury, I think the people who remain in the courtroom do a lot of work there. So it's members of the public. We had that here. It's the defendant's family and friends, his support system, who may incidentally have some factual knowledge about the case as well. It's certainly the defense attorney, the assistant United States attorney. And, blessedly, we can take this for granted here in the United States, but it's the presence of the jury as well. That serves an important function in the purposes, the origin of the Sixth Amendment, as far as ensuring this public trial. I think the other piece of that that I would recommend the court look to that's important is what's happening in the trial or in the proceeding at that moment. And here, we're talking about predominantly the cross-examination of a single cooperator. Cooperator testimony is important. The government wouldn't have called this witness if it was not, but he was one of three. He was not essential to count two or three. Was only cross-examination closed? It was the tail end of his direct, and the predominant part of the closure was the cross-examination. There was some brief redirect and recross as well. The cross-examination covered, focused on, his bias and his credibility. And that's not the type of testimony that someone in the gallery could hold to account. That's the type of factual information. And opposing counsel cited in his reply brief times that the government relied on this witness in closing. But those citations were to the direct examination, the part that no one disputes, was fully open courtroom that day. And so the next day, in this time when people may have been excluded, though it's not clear from the record to us that anyone was, we're talking about that witness's mindset, his credibility. And that's not the type of testimony that someone in the gallery could even hold to account. Could come forward and say, that's not what he meant when he said that thing. That's not what his bias is, what his mindset is. And so I think that matters too. To answer your question, I would look at who's in the courtroom, what purposes do they serve, and also what's happening in the courtroom at that moment. As far as the best case, the Anderson case in the Seventh Circuit talks about duration and scope. I'm not sure that that's the best per se, but to your question specifically about what should we look to, that is the place that distilled it in that way, that I think is a good summary of what triviality analysis has been across the other cases that we cited. Can I ask the question? You mentioned that we had, we being the Fourth Circuit, had adopted a triviality standard. And when I look at Bell and Snyder as being the two published cases, at least that I've found, I want to- Me too. Okay. And both of those involve like controlling ingress and egress, like controlling the number of people in the room, number of public in the room, which feel meaningfully different than actually closing a courtroom. Removing an individual who is being disruptive in a purely hypothetical sense doesn't seem to implicate the Sixth Amendment right. That's like the judge's power over his courtroom.  Limiting the number of people to the seats that are available, that doesn't seem to implicate the Sixth Amendment at all. And I would say similarly, limiting ingress and egress during testimony or during summation is certainly well within the district court's authority without implicating the Sixth Amendment. But none of those cases address like closing, like actually closing witness testimony such that if somebody had showed up, they could not have been admitted. Or maybe someone who was there wasn't admitted. Unclear. And so those cases don't seem to adopt any kind of triviality or an exception in that type of a circumstance as opposed to sort of the more mundane sort of running of a courtroom. They're factually distinct. I recognize that. And this court has not done the sort of fulsome multiple paragraphs and pages of an opinion that some other circuits have. I recognize that as well. The Second, the Seventh, and the D.C. Circuit have done a more thorough analysis basing in part on Snyder, at least in one of those cases. That hasn't happened here. But I do think the way that that case is written and that those cases discuss, they certainly take their facts and they're deciding their facts appropriately. They're different than our facts. But they do hold that by implication, there are circumstances that are entirely too trivial to implicate the Sixth Amendment. And that is what we're relying on. We agree with that holding. I guess the difficulty in why we have this case is, really gets to the question raised by Judge Agee, is what is the standard to apply when determining whether the Sixth Amendment is implicated? And I guess we don't know of a clear standard, but I guess what you're suggesting that we have to look at the values being protected by the Sixth Amendment and focus on those in determining whether it's implicated. Yes, Your Honor. And I think on the facts here, given the people who remained in the courtroom, the purposes that they served, and the happenings in the courtroom at this time, on these facts, I do not think the values of the Sixth Amendment were implicated and certainly were not offended. All right. Thank you very much. Thank you. If I may make one final point. Oh, sure. Opposing counsel mentioned the Carson case and talked about how it did a Waller examination. I do just want to clarify for the record that as to the mother-in-law, that case did a triviality analysis, so it wasn't just running through the Waller factors. It did that generally, but then as to one family member, it did find there was a triviality analysis. And the CSO at issue who said no one had come in the transcript, it does say that person was the lead CSO. So I think there's some degree of awareness that we can impute. So I just wanted to clarify a couple of factual things from. Thank you for your time. All right. Mr. Sosatarski. Thank you, Your Honor. Two points I'd like to address, if I may. First, with regard to the government's argument about this being a trivial violation, the witness at issue was testifying about a kilogram deal with the defendant. Obviously, important testimony. The government points out, well, this was cross-examination largely during the closure. Well, one of the key purposes of the Sixth Amendment public trial right is to discourage perjury. So that testimony on cross-examination about bias and about all those things is vitally important. Vitally important testimony. And it directly implicates one of the purposes of the trial, of the public trial right under the Sixth Amendment. Counsel, there are some, there are cases that go through a number of factors, two of which, and this is not, I don't think, where a Waller review was conducted, but they will cite the fact that there's a transcript that's publicly available to everything that happened during a partial closure and that the witness's testimony was reviewed and summarized by opposing counsel in argument to the jury. Where are the, do you give any credence to those factors? I recognize, Your Honor, that that's certainly noted in some of those cases. And again, I would say that that is within the context of each of those individual cases. Every case is a little different. Every case, and in those cases, the courts are actually engaging in the Waller analysis. And that, to me, is the key here. Because here, again. You had a, there is a transcript in this case. There is a transcript. And defense counsel did critique the testimony of the witness that's questionable here during her argument. And, Your Honor, I think that those points get into sort of this kind of conflict, really, as I see it, in the law. My very able colleague with the government, I would argue, to the court, is kind of subtly imposing a prejudice standard on us when none exists under the case law. That is to show. Well, I think prejudice focuses on the outcome of the trial. And it was, did it adversely affect the guilt or innocence of the trial? And we can't look at that. That's because it's structural. But whether, when you're talking about prejudice to the actual violation, it's more talking about the extent to which the values of the Sixth Amendment have been implicated. And so if you let in a bunch of people and not all people, those values may be served with some analysis. And I think that's the notion of prejudice. It doesn't prejudice the values of the Sixth Amendment, which is, I think, a different analysis than the prejudice that you're suggesting, the structural analysis would. Well, and, Judge Niemeyer, the other, one thing you just said alerted me to a point that I wanted to raise. The government's argument makes it sound like, as Your Honor just said, there were a bunch of people in the courtroom. Well, the bunch of people were the court personnel. As far as I can tell from the record, the defendant's wife and daughter were allowed into the courtroom. I don't know that there was. I thought defense counsel's parents were. They came in after that. So there's four people that are in the courtroom. We don't know how many were excluded. We believe that the transcript shows that the stepfather was specifically excluded, who's a family member who gets special emphasis under the Sixth Amendment cases. And we know that the door was shut to the public.  I think the court said the court was sealed. And I would go to footnote nine of Waller, which really hones in, I think, this quotation on this whole issue that we're discussing about how do we assess the Sixth Amendment rights and how were they affected. The court said there, Justice Powell, in footnote nine said, when talking about why this is structural error, he said, while the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the framers plainly thought them real. And I think that's a key phrase for what's going on here is I, as Mr. Ellis' lawyer, unfortunately can't take something in the record to show you and to say Mr. X got turned away at the door. I can't do that. I wish I could. But I think that this quotation from Justice Powell in Waller really hones in on why I don't have to do that. So we would argue that it's error. Thank you. Thank you. Thank counsel. Will, I think I'm free to adjourn court for the day today. Yes, sir. I apologize for that again. We'll come down and greet counsel, adjourn court for the day. And Judge Agee, I greet you by shaking hands. I gather I'm not speaking for you, Judge Agee. We are not proxying. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, Julius N. Richardson